UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| In re SPRINGFIELD HOSPITAL, INC., | ) | Chapter 11 Case |
| | ) | No. 19-10283 |
| Debtor-in-Possession | ) | |
| _____ | ) | |
| | ) | |
| In re SPRINGFIELD HOSPITAL, INC., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Adversary Proceeding |
| | ) | No. 20-01003 |
| JOVITA CARRANZA, in her capacity as | ) | |
| Administrator for the U.S. Small | ) | |
| Business Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' OPPOSITION TO SPRINGFIELD
HOSPITAL, INC'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING
ORDER AND REQUEST FOR HEARING DATE AND BRIEFING SCHEDULE WITH
RESPECT TO DEBTOR'S REQUEST FOR A PRELIMINARY INJUNCTION (DOC. 2)**

The United States of America (the "United States"), on behalf of the Jovita Carranza in her

capacity as Administrator for the U.S. Small Business Administration (SBA), files this opposition

to Plaintiff Springfield Hospital, Inc.'s ("Plaintiff") Emergency Motion for Temporary Restraining

Order and Request for Hearing Date and Briefing Schedule With Respect to the Debtor's Request

for a Preliminary Injunction ("Plaintiff's Motion") (Doc. 2 in 20-01003).  The United States joins

Plaintiff in the request for a hearing date and briefing schedule with respect to Plaintiff's request

for a preliminary injunction.

## INTRODUCTION

Plaintiff's Emergency Motion requesting a temporary restraining order seeks entry of injunctions that raise broad challenges to the SBA's implementation and administration of the CARES Act Payroll Protection program (PPP) -- a $659 billion loan guarantee program extending hundreds of thousands of loans to small businesses and non-profits across the nation in a matter of days. Specifically, Plaintiff asks the Court to overturn the SBA's stated and explicit policy of excluding bankrupt entities from the PPP.  Granting the injunctive relief Plaintiff seeks risks disrupting the administration of the PPP, in the middle of loan distribution. Such a drastic result would only be jusfitied by a strong showing that Plaintiff's claims are likely to succeed on the merits, that Plaintiff will be irreparably harmed absent relief and that the requested injunction is in the public interest Plaintiff cannot demonstrate any of those requirements.  Plaintiff cannot demonstrate that it is likely to succeed on its claims, because its claims are facially invalid.

First, the injunctive relief Plaintiff seeks against the SBA is barred by sovereign immunity. Second, Plaintiff's anti-discrimination claim under 11 U.S.C. § 525 fails because, by its plain terms, Section 525 does not apply to loans or loan guarantees. Third, Plaintiff cannot obtain a temporary restraining order through its Administrative Procedure Act (APA) claims or through its writ of mandamus because those claims are not core, and thus the Bankruptcy Court lacks jurisdiction to order relief on those claims. Plaintiff's APA and mandamus claims otherwise fail on their merits because the SBA acted wholly within its delegated authority in implementing the PPP.  The bankruptcy exclusion was addressed in two separate agency rules. And Congress, through the CARES Act and Small Business Act, explicitly delegated authority to the Administrator to issue those rules.

Plaintiff also fails to proffer anything more than the barest conclusory assertions to support its allegation of irreparable harm, which is far from sufficient to support its claim for injunctive relief. Further, awarding an injunction here would be against the public interest. In implementing the PPP, the SBA made a policy decision to limit PPP loans to those who had not filed for bankruptcy; in essence indicating a preference for what is a limited source of funding. Plaintiff asks the Court to replace the SBA's stated policy with the Plaintiff's policy preference. Doing so would eviscerate Congress' choice to vest with the SBA the authority to implement the PPP and oversee its own lending program.

## BACKGROUND

### A.      The Small Business Administration

Through the Small Business Act, 15 U.S.C. § 631 *et seq.*, Congress created the SBA to "aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns," in order to preserve the system of free competitive enterprise that is "essential" to the economic well-being and security of the Nation. 15 U.S.C. § 631(a).  To promote that objective, Congress placed the SBA under the management of a single Administrator, *id.*, § 633(a), (b)(1), who is given "extraordinarily broad powers" under section 7(a) of the Act, 15 U.S.C. § 636(a), to provide a wide variety of technical, managerial, and financial assistance to small-business concerns.  *See SBA v. McClellan*, 364 U.S. 446, 447 (1960); *see generally* 15 U.S.C. § 636(a) (describing numerous varieties of general small-business loans the Administrator is "authorized" and "empowered" to make); 13 C.F.R. § 120.1.  In the performance of these authorized functions, the Administrator is further empowered to "make such rules and regulations as [she] deems necessary to carry out the authority vested in [her]," and in addition to "take any and all

actions … [that] [she] determines … are necessary or desirable in making … loans." 15 U.S.C. §
634(b)(6), (7).

### B.      Section 7(a) Lending

The section 7(a) loan program is the SBA's primary program for providing financial
assistance to small businesses. Under the terms of the Small Business Act, SBA financial
assistance to a small business under section 7(a) may take the form of a direct loan, an immediate
participation (joint) loan with a lender, or a deferred participation (guaranteed) loan initiated by a
lender but a portion of which the SBA will purchase from the lender in the event of a borrower
default.  13 C.F.R. § 120.2(a); *see Valley Nat'l Bank v. Abdnor*, 918 F.2d 128, 129 (10th Cir.
1990); *California Pac. Bank v. SBA*, 557 F.2d 218, 219 (9th Cir. 1977).  In practice, however, the
SBA ordinarily guarantees loans made by private lenders rather than disbursing funds directly to
borrowers, *see United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 719 (1979), thus "reduc[ing]
risk for lenders … mak[ing] it easier for them to access capital," and thereby "mak[ing] it easier
for small business to get loans."  *See* https://www.sba.gov/funding-programs/loans.

### C.      Section 7(a) Loan Underwriting

Ordinarily, to qualify for an SBA general business loan, an applicant must (1) be an
operating business organized for profit that is located in the United States, 13 C.F.R. §
120.100(a)-(c); (2) meet the size standards for a "small" business set forth under the statute and
SBA rules (usually stated in terms of number of employees, or average annual receipts), *see* 15
U.S.C. § 632(a)(2); 13 C.F.R. § 120.100(d); 13 C.F.R. Part 121; and (3) demonstrate that the
desired credit is not available elsewhere on reasonable terms, 15 U.S.C. § 632(h); 13 C.F.R. §§
120.100(e), 120.101.

In addition to these requirements, the Small Business Act requires that "[a]ll loans made under this subsection *shall* be of such sound value or so secured as reasonably to assure repayment." 15 U.S.C. § 636(a)(6) (emphasis added). For regular 7(a) loans, the factors to reasonably assure repayment are described in general terms in 13 C.F.R. § 120.150.  Further factors are described in greater detail in Standard Operating Procedures (SOP) and on the official application form for 7(a) loans.  *See* SOP 10-50-05(K) (attached hereto as Exhibit A); SBA Form 1919 (attached hereto as Exhibit B).  For example, Official Form 1919 also considers whether the applicant has "ever filed for bankruptcy protection." *Id.* By regulation, requirements listed on this form, and other official SBA forms, comprise part of the "Loan program requirements." 13 CFR § 120.10. Lenders, in turn, agree to abide by these Loan program requirements when joining the section 7(a) lending program.

### D.      The Coronavirus Aid, Relief, and Economic Stimulus ("CARES") Act

On March 27, 2020, President Trump signed into law the Coronavirus Aid, Relief, and Economic Stimulus ("CARES") Act, Pub. L. 116-136, 134 Stat. 281, passed by Congress to provide an unprecedented package of emergency economic assistance and other support to help individuals, families, businesses, and health-care providers cope with the enormous economic and public health crises—unlike any experienced in the lifetime of the Nation—triggered by the worldwide coronavirus (COVID-19) pandemic.  *See* SBA, Interim Final Rule, "Business Loan Program Temporary Changes; Paycheck Protection Program" (the "First Interim Final Rule"), Fed. Reg. Vol. 85 No. 73 at 20811.

Among the numerous measures taken by the CARES Act to address the COVID-19 crisis, of concern here is the Paycheck Protection Program ("PPP"), CARES Act. § 1102, enacted to extend relief to small businesses experiencing economic hardship as a result of the

5

public-health measures being taken to minimize the public's exposure to the COVID-19 virus. *See* First Interim Final Rule, Fed. Reg. Vol. 85 No. 73 at 20811.  Specifically, section 1102(a)(2) of the CARES Act adds a new paragraph (36) to section 7(a) of the Small Business Act, 15 U.S.C. § 636(a)(36) to extend loans to eligible small business for certain covered uses, including "payroll costs," the "payment of interest on any mortgage obligation," and "rent," among  other approved uses. CARES Act § 1102(a)(2); 15 U.S.C. § 636(a)(36)(F)(i).

Otherwise, the existing section 7(a) requirements and limitations remain unaltered and govern PPP lending. The CARES Act provides that "*[e]xcept as otherwise provided in this paragraph*, the [SBA] may guarantee [PPP] covered loans"—not make loans directly, however—"under the same terms, conditions, and processes as a loan made under this subsection," *i.e.*, section 7(a) of the Small Business Act. 15 U.S.C. § 636(a)(36)(B) (emphasis added).

The PPP then sets forth in extensive detail the precise ways in which PPP covered loans differ from other section 7(a) loans. *Id*. § 636(a)(36)(D)-(R).  Among these differences, the PPP authorizes the SBA to make covered loans to various non-profit organizations, independent contractors, and self-employed individuals, as well to small business concerns, *id*. § 636(a)(36)(D)(i), (ii); relaxes size limitations to allow businesses with as many as 500 employees (or more, depending on the industry in which they operate) to receive assistance, *id*. § 636(a)(36)(D)(i)(I); and (iii) selectively waives certain of the SBA's affiliation rules used to make small business "size."  The CARES Act leaves unaltered the "[a]ll loans made under this subsection shall be of such sound value or so secured as reasonably to assure repayment." 15 U.S.C. § 636(a)(6).

The CARES Act initially allocated $349 billion to guarantee PPP loans.  First Interim Final Rule, Fed. Reg. Vol. 85 No. 73 at 20812. On April 16, 2020, the SBA issued a notice stating that the PPP was closed to new applications. Congress then passed the Paycheck Protection Program and Health Care Enhancement Act (CARES Act 2) on April 24 to add an additional $310 billion to the PPP. PL 116-139 § 101(a)(1). The SBA posted notice on its website that it would begin accepting new PPP applications from participating lenders on Monday, April 27, 2020 at 10:30 am. *See* "Notice: PPP Resumes April 27, 2020," *available at* https://www.sba.gov/funding-programs/loans/coronavirus-relief-options/paycheck-protection-program#section-header-0.

### E.     Emergency Rulemaking Authority

The CARES Act authorizes the Administrator of the SBA to issue emergency regulations to implement the PPP without complying with typical notice and comment requirements. CARES Act § 1114.  The Administrator of the SBA posted its First Interim Final Rule on the SBA website on April 3, 2020.  The First Interim Final Rule was subsequently published in the Federal Register on April 15.  Fed. Reg. Vol. 85 No. 73 at 20811. The First Interim Final Rule "streamlin[es] the requirements of the regular 7(a) loan program." *Id.* at 20812. For instance, the rule states that lenders need not comply with case by case underwriting requirements of 13 CFR 120.150. *Id.* at 20812.  Instead, under a section titled "What Do Lenders Have to Do in Terms of Loan Underwriting," the rule states that "Each lender's underwriting obligation under the PPP is limited to [the enumerated] items above and reviewing the 'Paycheck Protection Application Form.'" The Paycheck Protection Application Form itself requires the borrower to certify, among other things, that it is "not presently involved in a bankruptcy."  SBA Form 2483 (attached hereto as Exhibit C).

7

On April 24, concurrent with Congress' extension of additional funding for the PPP, SBA

posted a new interim final rule, which was subsequently published in the Federal Register on

April 28, 2020. "Business Loan Program Temporary Changes; Paycheck Protection Program –

Requirements – Promissory Notes, Authorizations, Affiliation, and Eligibility" (the "Fourth

Interim Final Rule[1]) (attached hereto as Exhibit D). The Fourth Interim Final Rule provides

additional information regarding a number of eligibility requirements. Section III(4) of the

Fourth Interim Final Rule specifically addresses entities in bankruptcy. It provides:

> *4. Eligibility of Businesses Presently Involved in Bankruptcy Proceeding.*
>
> *Will I be approved for a PPP loan if my business is in bankruptcy?*
>
> No.  If the applicant or the owner of the applicant is the debtor in a bankruptcy proceeding, either at the time it submits the application or at any time before the loan is disbursed, the applicant is ineligible to receive a PPP loan.  If the applicant or the owner of the applicant becomes the debtor in a bankruptcy proceeding after submitting a PPP application but before the loan is disbursed, it is the applicant's obligation to notify the lender and request cancellation of the application.  Failure by the applicant to do so will be regarded as a use of PPP funds for unauthorized purposes.
>
> The Administrator, in consultation with the Secretary, determined that providing PPP loans to debtors in bankruptcy would present an unacceptably high risk of an unauthorized use of funds or non-repayment of unforgiven loans.  In addition, the Bankruptcy Code does not require any person to make a loan or a financial accommodation to a debtor in bankruptcy.  The Borrower Application Form for PPP loans (SBA Form 2483), which reflects this restriction in the form of a borrower certification, is a loan program requirement.  Lenders may rely on an applicant's representation concerning the applicant's or an owner of the applicant's involvement in a bankruptcy proceeding.

Fourth Interim Final Rule, Fed. Reg. 85 Vol. 82 at 23451.

---

[1] The SBA also issued a second interim final rule addressing affiliation rules, 85 Fed. Reg. 20817, and a third interim final rule addressing the way in which self-employment income of partners and independent contractors should be handled.  85 Fed. Reg. 21747.

# ARGUMENT

## I.   LEGAL STANDARD

A temporary restraining order is an "extraordinary and drastic remedy" that is "never awarded as of right," *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citation omitted), and "may only be awarded upon a clear showing that the plaintiff is entitled to such relief," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *see also*, *e.g.*, *Salinger v. Colting*, 607 F.3d 68, 79 (2d Cir. 2010) ("A temporary restraining order, like a preliminary injunction, is an extraordinary remedy never awarded as of right.").  "Thus, a plaintiff seeking a temporary restraining order must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Salinger*, 607 F.3d at 79.  Moreover, "[t]he party seeking the injunction carries the burden of persuasion to demonstrate, 'by a clear showing,' that the necessary elements are satisfied."  *Id.*

Because a TRO is an extraordinary remedy, the right to relief must be "clear" and unequivocal.  *JBR, Inc. v. Keurig Green Mountain, Inc.,* 618 Fed. App'x 31, 33 (2d Cir. 2015); *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007)); *see also*, *e.g.*, *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003); *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007).

Injunctions that disrupt the status quo are disfavored and "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1259 (10th Cir. 2005); *see also Eng v. Smith*, 849 F.2d 80, 82 (2d Cir. 1988) (similar). An injunction disrupts the status quo when it changes the "last peaceable uncontested status existing between the parties before the dispute developed." *Schrier*, 427 F.3d at 1260. In such instances, the

district court may not grant relief such as a temporary restraining order or a preliminary injunction unless the plaintiff makes a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms.  *See, e.g.*, Salinger, 607 F.3d at 79; Langlois *v. Abington Housing Auth.*, 207 F.3d 43 (1st Cir. 1999); *Auburn News Co., Inc. v. Providence Journal Co.,* 659 F.2d 273, 277 (1st Cir.1981); *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 976 (10th Cir. 2004) (en banc). This heightened standard accords with the historic purpose of the preliminary injunction, which is to "preserve the relative positions of the parties until a trial on the merits can be held." *O Centro*, 389 F.3d at 977; *see also Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1125 (2d Cir. 1989).

Here, the status quo is that the Plaintiff is excluded from the PPP program because it is in active bankruptcy. The Plaintiff has not received any PPP loan and the money Plaintiff seeks is available to guarantee loans for eligible applicants. Because Plaintiff seeks to disrupt this status quo, it bears a heightened standard of "mak[ing] a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms." *O Centro*, 389 F.3d at 976.

For the reasons that follow, Plaintiff has not carried these heavy burdens.

## II.    PLAINTIFF FAILS TO ESTABLISH A LIKELIHOOD OF SUCCESS ON THE MERITS.

### A.    The Small Business Act's Jurisdiction-Stripping Provision Precludes The Injunctive Relief Plaintiff Seeks.

 While the Small Business Act does contain a waiver of sovereign immunity, that waiver is limited.  It provides that the SBA may:

> sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy; *but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the [agency] or [its] property[.]*

15 U.S.C. § 634(b)(1) (emphasis added).

This statute to precludes jurisdiction in suits seeking injunctive or any similar relief against the SBA.  *See*, *e.g.*, *United States v. Mel's Lockers, Inc.*, 346 F.2d 168, 170, (10th Cir. 1965) ("The provisions in the Small Business Act which permit the Administrator to  be sued, specifically provide that no injunction shall be issued against the Administrator or his property. This language is too clear for misunderstanding that there is no waiver by Congress as to injunction suits.") (waiver of sovereign immunity in Bankruptcy Act did not override prohibition on injunctions); *Mar v. Kleppe*, 520 F.2d 867, 869 (10th Cir. 1975) ("The decisions have uniformly considered that this statute effectively precludes injunctive relief against the Administrator.") (collecting cases); *J.C. Driskill, Inc. v. Abdnor*, 901 F.2d 383, 386 (4th Cir. 1990) (explaining that "courts have no jurisdiction to award injunctive relief against the SBA"); *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1290 (5th Cir. 1994) (same).  Because Congress has removed authority to enjoin the SBA, Plaintiff's request for preliminary injunction must be denied.

### B.     Plaintiff's Anti-Discrimination Claim Will Fail Because Section 525 of the Bankruptcy Code Does Not Apply to Loans.

Section 525(a) of the Bankruptcy Code prohibits a governmental unit from denying, revoking, suspending, or refusing to renew "a license, permit, charter, franchise, or other similar grant . . ." on the basis of being or having been a debtor in bankruptcy. By its plain language, the prohibition in 525(a) does not apply to lending or loan guarantees.

Indeed, the only mention of lending in Section 525 is found in subsection (c), added in 1994 to address government student loan programs. 103 P.L. 394 § 313. Subsection (c) provides: "[a] governmental unit that operates a student grant or loan program . . . may not deny a grant, loan, loan guarantee, or loan insurance to a person that is or has been a debtor under this title or .

. . under the Bankruptcy Act . . . "  28 U.S.C. § 525(c).  If Section 525 applied to government guaranteed loans more broadly, Congress would not have needed to amend the law to include government student loan programs. And in amending the law to address government student lending, Congress could have addressed other government lending programs, but chose not to.

Each Circuit that has addressed this issue has determined that a government entity conditioning a loan on whether the party receiving the loan is in bankruptcy *does not* violate section 525 because a loan is not "grant" that is similar to a "license, permit, charter, [or] franchise."  *See*, *e.g.*, *Watts v. Pennsylvania Housing Fin. Co.*, 876 F.2d 1090, 1094 (3d Cir. 1989) (holding that an emergency home loan assistance program in which payments were suspended if an entity filed for bankruptcy and the automatic stay was not lifted did not violate section 525); *Ayes v. U.S. Department of Veterans Affairs*, 473 F.3d 104, 110 (4th Cir. 2006) (holding that veteran loan guarantee was not within the scope of section 525); *Toth v. Michigan State Housing Development Authority*, 136 F.3d 477, 480 (6th Cir. 1998) (holding that section 525 does not apply to state issued home improvement loans). The Second Circuit reached the same conclusion in a case concerning student loans prior to the amendment of section 525 in 1994 to include 525(c).  *In re Goldrich*, 771 F.2d 28, 30 (2d Cir.1985) (interpreting omission of post-discharge credit arrangements from language of § 525 as intentional and declining to extend § 525 to student loan guarantees).

A number of district and bankruptcy courts have reached the same conclusion.  *See, e.g*., *In re Jasper*, 325 B.R. 50, 55 (Bankr. D. Me. 2005) (revoking credit union privileges on the basis of filing for bankruptcy did not violate section 525); *United States v. Cleasby*, 139 B.R. 897, 900 (Bankr. W.D. Wis. 1992) (holding a loan is not a "similar grant" within the meaning of § 525 and declining to extend § 525 protection to applications for debt restructuring); *Lee v. Yuetter*, 106

B.R. 588, 592 (Bankr. D. Minn.1989) (declining to extend § 525 protection to applications for debt restructuring program and analogizing program to extensions of credit), *aff'd*, 917 F.2d 1104 (8th Cir.1990).

An instructive review of the statutory history of 11 U.S.C. and existing case law was conducted by the bankruptcy court in the District of Utah. *In re Rees*, 61 B.R. 114, 116-24 (Bankr. D. Utah 1986). The court explained that 11 U.S.C. § 525 "intended to codify the rule of *Perez v. Campbell*, 402 U.S. 637 (1971), which held that a state could not frustrate the Congressional policy of a fresh start for a bankrupt by refusing to renew a driver's license based on a discharged judgment resulting from an automobile accident." *In re Rees*, 61 B.R. at 116-17. An early proposal for the provision contained broad language prohibiting "discriminatory treatment because he, or any person with whom he is or has been associated, is or has been a debtor or has failed to pay a debt discharged in a case under the Act. *Id*. "The credit industry was extremely concerned about the wording . . . , and urged that it be redrafted to limit its application to *Perez*-type situations and prevent its application in the field of credit granting." *Id*. at 118.The provision was subsequently redrafted to hue more closely to the *Perez* decision, prohibiting discrimination in the issuance of "a license, permit, charter, franchise, or other similar grant." *Id.*

The PPP is in no way like the archetypal driver's license in *Perez*, nor the other items enumerated in Section 525(a). The PPP does not provide a right to engage in a specific activity or profession, like a license, permit, charter or franchise." 11 U.S.C. § 525(a); *see Ayes*, 473 F.3d at 109 (the enumerated items in 525(a) "implicate 'government's role as a gatekeeper in determining who may pursue certain livelihoods' . . . and show that Congress intended § 525(a)'s protections to be limited to situations sufficiently similar to *Perez*") (quoting *Toth*, 136 F.3d at 480). The PPP operates to provide emergency funding to certain eligible small businesses.

Business that are excluded from funding are not prohibited from operating, as with a refusal to

provide a license, permit, charter or franchise. And, unlike the archetypal driver's license, where

the state is the sole entity to provide licensing, the PPP is not the sole source of funding. Indeed,

entities in active bankruptcy may be eligible for other relief under the CARES Act itself,

including Emergency EIDL grants. *See* CARES Act § 1110.[2]

    **C.**    **Plaintiff's APA Claims Will Fail**

        1.    <u>The Bankruptcy Court Lacks Authority to Enter Orders on Plaintiff's APA</u>
                <u>Claim Because Those Claims Are Not "Core."</u>

Although bankruptcy courts have jurisdiction pursuant to 28 USC §1334(b) to hear

matters that are related to a case arising under Chapter 11, they possess authority only to enter

findings of fact and conclusions of law if the matters being heard are non-core proceedings.  28

U.S.C. § 157(c)(1). "[B]ankruptcy judges do not enter final orders or judgments in non-core

proceedings. Rather, they submit proposed findings of fact and conclusions of law to the district

court, which enters final orders and judgments after de novo review.  *Arellano v. Montoya (In re*

*Arellano)*, 2007 WL 1746246, *4, No. 07-ap-1024 (Bankr D. N.M. June 14, 2007) (Starzynski,

J.) (citing *Wood v. Wood (In re Wood)*, 825 F.2d 90, 92 (5th Cir.1987) and *Personette v.*

*Kennedy (In re Midgard Corporation)*, 204 B.R. 764, 771 (10th Cir. B.A.P.1997)); *accord ADT*

*Sec. Servs., Inc. v. Firstline Sec., Inc.*, 2008 WL 5226376, *3, No. 08-cv-00466 (D. Colo. Dec.

12, 2008).  Core matters are defined in 28 USC 157(b)(2).  Non-core proceedings are those that

---

[2] The PPP is indisputably a lending and loan guarantee program. *See e.g.*, CARES Act § 1102(a)(2) (addressing "covered loans"), § 1102(b) (appropriated funding available "for commitments for general business loans authorized under section 7(a) of the Small Business Act, including loans made under paragraph (36) of such section [PPP loans]." Plaintiff concedes as much. *See, e.g.*, Compl. ¶ 61 ("PPP offer applicants guaranteed loans that are not otherwise obtainable in the private marketplace."). It has been argued, moreover, that PPP loan guarantees are so generous as to be effectively grants. But whether PPP extends loan guarantees or grants is not relevant. The proper question is whether the PPP is "similar to a license, permit, charter, franchise." 11. U.S.C. § 525(a). As described above, the PPP is not similar to those enumerated items.

do not depend on the bankruptcy laws for their existence and that could proceed in another court even in the absence of bankruptcy.

Plaintiff's APA claims do not arise in or under Title 11, but rather arise from the Plaintiff's assertion that the SBA failed to properly implement the Cares Act. As such, the Bankruptcy Court may, at most issues findings of fact and conclusions of law, which must then be reviewed by the District Court before any order may be entered. This Court thus lacks jurisdiction to award injunctive relief on the APA claims. *Aimtree Co. v. AT & T Corp. (In re Aimtree Co.)*, 202 B.R. 154, 156 (D. Kan. 1996) (noting "bankruptcy court lacked statutory authority to enter an injunction in this 'non-core' proceeding").

2.    The Bankruptcy Exclusion is Authorized by Explicit Rules and Congress Delegated the Administrator Broad Discretion to Issue Those Rules.

Plaintiff is also unlikely to succeed on its claim that the Defendant exceeded statutory authority, because the claim lacks any merit. Plaintiff appears to contend that the bankruptcy exclusion must be unlawful because it is not specifically mentioned in the CARES Act.  But the fact that the CARES Act is silent on bankruptcy ineligibility[3] is far from dispositive. The Court instead "reviews the interpretation of statutes the [Administrator] is entrusted to administer under the principles articulated in *Chevron U.S.A. Inc. v. NRDC*, 467 U.S. 837 (1984)." *Comanche Nation of Okla. v. Zinke*, 754 Fed. Appx. 768, 772-73 (10th Cir 2018). "Unless Congress has directly spoken to the precise question at issue, we ask only whether the agency's answer is based on a permissible construction of the statute." *Id.* at 773 (internal quotations marks omitted). The agencies interpretation then receives "controlling weight unless it is arbitrary, capricious, or manifestly contrary to the statute. *Id*. "If Congress has explicitly left a gap for the

---

[3] The PPP Application Form includes other limitations not specifically addressed in the CARES Act. For instance, the PPP excludes entities that have been debarred from federal programs.

agency to fill, there is an express delegation of authority to the agency to elucidate a specific

provision of the statute by regulation. . . . Sometimes the legislative delegation to an agency on a

particular question is implicit rather than explicit. In such a case, a court may not substitute its

own construction of a statutory provision for a reasonable interpretation made by the

administrator of an agency." *Harbert v. Healthcare Servs. Group, Inc.*, 391 F.3d 1140, 1147

(10th Cir. 2004) (quoting *Chevron*, 467 U.S. at 843-44).

 The SBA was delegated broad authority to implement its lending programs and the

bankruptcy exclusion falls within this authority. The SBA Administrator is explicitly empowered

to "make such rules and regulations as [she] deems necessary to carry out the authority vested in

[her]," and in addition to "take any and all actions … [that] [she] determines … are necessary or

desirable in making … loans." 15 U.S.C. § 634(b)(6), (7). The CARES Act did not amend or

otherwise limit this authority. Instead, Congress explicitly included the PPP in the section 7(a)

lending program, thus vesting the Administrator with broad discretion over the PPP. Indeed,

rather than curtailing the Administrator discretion over the PPP, the CARES Act expanded it, by

giving the Administrator authority to issue new regulations and rules to implement the PPP

without complying with typical notice and comment requirements. CARES Act § 1114.

 The Administrator exercised this explicit delegation of authority to issue two rules

addressing the bankruptcy exclusion. The First Interim Final Rule incorporated the PPP

Application Form and the bankruptcy exclusion provided on that form. The Fourth Interim Final

Rule further addresses ineligibility of entities in active bankruptcy and describes the policy

reason animating that agency decision.

 Nothing in the CARES Act precludes excluding bankrupt entities from the PPP; the law

instead gives the Administrator broad discretion to consider bankruptcy status. First, even before

the CARES Act, the section 7(a) lending procedures explicitly considered the applicants'
bankruptcy status to ensure that loans be of "sound value ... as reasonably to assure repayment."
15 U.S.C. 636(a)(6); *see also* SOP 50-10-5; Form 2483.

The CARES Act did not amend the requirement in 15 U.S.C. § 636(a)(6) that loans be of
"sound value." The CARES Act instead explicitly left that provision unaltered, along with
section 7(a) lending procedures more broadly, except where specifically altered. CARES Act §
1102(a)(2) (providing that "[e]xcept as otherwise provided in this paragraph, the Administrator
may guarantee covered loans under the same terms, conditions, and processes as a loan made
under this subsection."); 15 U.S.C. § 636(a)(36)(B).

To implement the PPP, the Administrator determined that the regular section 7(a) lending
requirements should be "streamlined" by eliminating case-by-case underwriting and replacing it
with questions on the PPP Application Form, including the bankruptcy exclusion question. First
Interim Rule at 28011-12. That decision falls squarely within the SBA's broad discretion over its
lending programs, and within the further delegation of emergency rulemaking authority provided
by the CARES Act.

### D.      Plaintiff's Claim for Mandamus Will Fail Because Congress Delegated Discretion to Implement the PPP.

"Mandamus relief is an appropriate remedy to compel an administrative agency to act
where it has failed to perform a nondiscretionary, ministerial duty." *Marathon Oil Co. v. Lujan*,
937 F.2d 498, 500 (10th Cir. 1991). However, "the remedy of mandamus is a drastic one, to be
invoked only in extraordinary circumstances." *Wilder v. Prokop*, 846 F.2d 613, 620 (10th Cir.
1988) (citations omitted). The Court, in evaluating a writ of mandamus action, must consider three
prerequisites before exercising its discretion in determining whether to issue the writ: (1) plaintiffs
must have "a clear right to relief," (2) the Defendants' "duty to perform the act in question is

plainly defined and peremptory," as well as non-discretionary and ministerial, and (3) plaintiffs have "no other adequate remedy." *Schoenrogge v. Rooney*, 255 F. App'x 324, 325-26 (10th Cir. 2007) (citing *Rios v. Ziglar*, 398 F.3d 1201, 1206 (10th Cir. 2005)). Further, "[g]eneral claims of agency overreaching are simply insufficient to create a legal duty under the Mandamus Act." *Dunn-McCampbell Royalty Interest, Inc. v. National Park Service*, 112 F.3d 1283, 1288 (10th Cir. 1997).

Plaintiff has not even attempted to establish any of these elements and thus cannot demonstrate entitlement to the drastic remedy of mandamus. Moreover, implementing the PPP is far from a ministerial, non-discretionary act. The CARES Act, for instance, does not describe the application form or process in any detail. Congress instead created the PPP through the existing section 7(a) lending program, over which the Administrator has broad discretion. *See supra* at 15-16. Congress then gave the Administrator emergency rule making authority to implement the PPP. *Id*. This discretion delegated by Congress defeats any claim to mandamus.

## III.    PLAINTIFF HAS NOT ESTABLISHED IRREPARABLE HARM.

Plaintiff fails to allege facts demonstrating that it would be irreparably injured by Defendants' actions in the absence of prospective injunctive relief. Instead Plaintiff alleges only the barest conclusory statements. This does not suffice.

"A showing of irreparable harm is perhaps considered the single most important requirement in satisfying the standard." *Shady v. Tyson*, F. Supp. 2d 102, 105 (S.D.N.Y. 1998); *see also Reuters Ltd. v. United Press Int'l. Inc*., 903 F.2d 904, 907 (2d Cir.1990) (recognizing that "irreparable harm is the single most important prerequisite for the issuance of a preliminary, injunction"). "The applicant must establish more than a mere 'possibility' of irreparable harm." *Shady*, 5 F. Supp. 2d at 105. Rather, he must show that irreparable harm is "likely" to occur. *Id*. In other words, "[t]o constitute irreparable harm, an injury must be certain, great, actual and not

theoretical." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003); *see also Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C.Cir.1985); *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001)). "Irreparable harm is not harm that is 'merely serious or substantial.'" *Id.* at 1189 (quoting *Prairie Band,* 253 F.3d at 1250 and *A.O. Smith Corp. v. FTC,* 530 F.2d 515, 525 (3d Cir.1976)). "The party seeking injunctive relief must show that the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* (quoting *Prairie Band* at 1250). "It is also well settled that simple economic loss usually does not, in and of itself, constitute irreparable harm." *Id.* (citing 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2948.1, at 152–53 (2d ed.1995)).

Plaintiff does not even make a serious attempt to demonstrate the consequences to Plaintiff if an injunction is denied. Rather, the Complaint simply summarily asserts that "[Plaintiff] *projects* that it will run out of money to pay ongoing expenses by the first week of June if it is unable to obtain funds from PPP or other sources and in the absence of a widespread outbreak of Covid-19 in the Springfield area. This would result in the Debtor being forced to immediately close its business without sufficient funds for an orderly wind-down." Compl. ¶ 36 (emphasis added). But simply stating that Plaintiff projects that it may run out of money in early June is not sufficient to meet Plaintiff's burden. Plaintiff has attached no evidence to support this bare assertion. At a minimum, Plaintiff needs to flesh out these allegations beyond a one-sentence summary statement. Thus, even if Plaintiff can prove the assertions it has made, those assertions do not come close to demonstrating irreparable harm.

## IV.    THE PUBLIC INTEREST WEIGHS AGAINST ENJOINING THE SBA.

Finally, to obtain a temporary restraining order in a case against the United States, Plaintiff must show that the sweeping injunction they seek would be in the public interest. *Nken,*

556 U.S. at 435. Plaintiff cannot make that showing for at least three reasons: (1) the resolution

of complex and competing policy interests at stake in administering the PPP is best left to

Congress and the SBA; (2) the SBA has already determined that it should apply eligibility

restrictions contrary to those Plaintiff prefer when administering the PPP and Congress has

determined that the SBA's implementation of the PPP should not be subject to injunction; and

(3) the relief Plaintiff seeks has "potentially unknowable effects." *Profiles, Inc. v. Bank of Am.*

*Corp.*, 2020 WL 1849710, at *11 (D. Md. Apr. 13, 2020).

        First, if granted, Plaintiff's proposed injunction would short-circuit the rapidly-evolving

political and administrative landscape of responding to COVID-19. Plaintiff seeks broad,

nationwide relief "enjoining SBA or any commercial lender from denying an application under

PPP on the basis that the applicant is a debtor in bankruptcy" and asks the Court to "enjoin SBA

from issuing loan guaranties or approving PPP applications in an amount that would leave

insufficient funds for the Debtor's funding."  Compl., Relief Requested at ¶¶ A & B. But during

this unprecedented situation, the public interest is best served by permitting the SBA to carry out

the duties Congress assigned it, namely ensuring the swift flow of loan guarantees that Congress

has deemed essential to protecting small businesses and the overall economy, in accordance with

the law. As one court has already observed, "given the competing policy interests, the need to

balance the desire to assist the widest swath of small businesses with the need to incentivize

lender participation, and the overall fluidity of this epidemic, Congress is better positioned to

remedy any defects in the CARES Act, and to pass the supplemental legislation it believes best

aimed at ameliorating the effects of the COVID-19 crisis." *Profiles*, 2020 WL 1894970 at *12. In

short, Plaintiff's TRO "may undermine Congress's goal to maximize relief for American small

businesses" and therefore run directly counter to the public interest. *Profiles,* at *11; *see Am.*

*Ass'n of Political Consultants v. SBA*, 2020 WL 1935525, at *7 (D.D.C. Apr. 21, 2020) (denying a TRO motion seeking to overturn the prohibition on political or lobbying groups from receiving section 7(a) loans).

Second, imposing Plaintiff's requested injunction would reverse the SBA's stated policy preference, which Congress chose to make immune from injunction. The SBA has a clear policy to exclude bankrupt entities from PPP lending because such lending "would present an unacceptably high risk of an unauthorized use of funds or non-repayment of unforgiven loans." Fourth Interim Final Rule at 23451. The Plaintiff wishes to replace this judgment with its own policy preference. But, as explained above, Congress chose to empower the SBA to implement the PPP, thus its policy carries the force of law. Congress also chose to immunize the SBA from injunctive relief. Issuing an injunction here would run directly against that public policy, which provides further proof that the balance of the equities must be struck in the Government's favor. Thus, issuing the injunction Plaintiff seeks would represent precisely the sort of interference with Defendants' statutory obligations that runs contrary to the public interest.

Third, as another court has already explained, the broad injunctive relief Plaintiff seeks could "have consequences reaching far beyond the litigants in this particular case." *Profiles, Inc.*, 2020 WL 1849710, at *11. Its impacts would cost "valuable time" for both Congress and Defendants to effectively respond to changing circumstances and for small businesses applying for current or potential future PPP loans to receive funds. *Id.* In short, a temporary restraining order here would throw a wrench into policymakers' evolving responses to the pandemic's economic fallout and would adversely affect thousands of small businesses that need help now. In these circumstances, "[t]he proper balance between the competing and compelling public interests implicated in this incredibly complex situation must be struck by the legislative

branch." *Id.* at \*4. Under these unprecedented circumstances, the Court should strike the balance in the Government's favor and deny Plaintiff's unprecedented requests for preliminary injunctive relief.

## V.    PLAINTIFF MAY NOT SEEK RELIEF ON BEHALF OF OTHERS.

Plaintiff seeks relief that impacts all PPP applicants with its request that the temporary restraining order enjoin "SBA from issuing loan guaranties or approving PPP applications" and enjoining SBA from "denying an application under PPP on the basis that the applicant is a debtor in bankruptcy…" Compl., Requested Relief at ¶¶ A-C. But, even if Plaintiff were entitled to relief -- it is not -- Plaintiff lacks standing to seek an injunction on behalf of others. *See Gill v. Whitford*, 138 S. Ct. 1916 (2018) ("[A] plaintiff's remedy must be limited to the inadequacy that produced his injury in fact." (internal quotation marks omitted)) (rejecting standing for a statewide gerrymandering challenge because a plaintiff's remedy must be limited to his injury).

Further, "[i]t is well settled an injunction must be narrowly tailored to remedy the harm shown." *Garrison v. Baker Hughes Oilfield Operations, Inc.*, 287 F.3d 955, 962 (10th Cir. 2002) (collecting cases). The requested nationwide injunction goes far beyond the minimum necessary to preserve Plaintiff's claims until a final decision is entered on the merits, and thus should be denied.

## CONCLUSION

For the foregoing reasons, plaintiff's request for a temporary restraining order should be denied.

Dated: April 29, 2020            Respectfully submitted,

UNITED STATES OF AMERICA

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

CHRISTINA E. NOLAN
United States Attorney

By:    /s/ *Melissa A. D. Ranaldo*
MELISSA A.D. RANALDO
Assistant U.S. Attorney
P.O. Box 570
Burlington, VT 05402-0570
(802) 951-6725
Melissa.Ranaldo@usdoj.gov


RUTH A. HARVEY
Director
MARGARET M. NEWELL
Assistant Director
MICHAEL TYE
Trial Attorney
(*pro hac vice motion pending*)
United States Department of Justice
Commercial Litigation Branch,
Civil Division
P.O. Box 875, Ben Franklin Station
Washington, DC 20044-0875
 (202) 305-2419
Michael.Tye@usdoj.gov